## Preston v. Rheubottom.

(Decided March 17, 1922.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Brokers—Commissions.—A broker employed to sell property on commission is entitled to it, notwithstanding the title of his principal to the property fails in whole or in part, unless the broker knew before making the sale, or before performing his services, of the defective condition of the title or possessed knowledge of such facts as that a reasonable inquiry would have developed the true condition of the title.
2. Brokers—Commissions—Rebate.—Even if there was such failure of title as justified a rebating of the commissions it should be done

on the basis of the sale, i. e., if the commission was based upon an agreed price per acre (if the property was real estate) the rebate should be apportioned between the acreage of the entire amount of land involved and of that the title to which failed, and the principal does not have the right to rebate a lump or gross sum irrespective of the acreage covered by the defective title.

BLAKEY, DAVIS & LEWIS for appellant.

BEN F. WASHER and FRED FORCHT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On March 22, 1919, the appellant and defendant below, L. W. Preston, was the owner of forty-seven (47) oil leases on various tracts of land in Barren county aggregating 3,983 acres. On that day he entered into a written contract with appellee and plaintiff below, Allen Rheubottom, by which he employed the latter as broker to sell all or a part of the leases upon terms stated in the contract of employment, which in substance, were that the defendant should first receive $2.50 per acre for all the leases disposed of under the contract and the parties were to then each share one-half of the surplus above that amount. In stating how the surplus should be shared the contract says: "It is further understood and agreed that all money received over and above $2.50 per acre, shall be divided equally between the parties hereto namely, L. W. Preston and Allen Rheubottom;" and it was further agreed that plaintiff should pay all of the expenses incurred in efforts to make the sale, not to exceed the sum of $500.00. The contract was entered into in the city of Bowling Green, and the next day the parties went to Louisville, and on April 21, thereafter, defendant closed a deal for the sale of so much of the leases as covered 2,000 acres with the Piedmont Oil Company through negotiations with W. M. Giltner, one of its officers, for the agreed price of $9,000.00, or an average of $4.50 per acre. Five thousand dollars of the purchase price was paid in cash upon the transfer of the leases, and $4,000.00 was agreed to be paid within a month or two thereafter, but $2,000.00 of the deferred payment was voluntarily rebated by the defendant, because of what he claims was a defective title to one of his leases which he designates as the "Star" lease; however, he did not allege, nor did he or any other witness prove the acreage of that lease.

Plaintiff filed this suit against defendant to recover his half of the $4,000.00 surplus of the purchase price above $2.50 per acre, upon the ground that his efforts were the procuring cause of the sale and that he brought defendant and Giltner together and that it was through his solicitations that the sale was effected. The answer contained a denial of the grounds of recovery, except the making of the contract was admitted, and in separate paragraphs it was averred (a), that it was agreed at the time of the making of the contract that the right of plaintiff to effect a sale was limited to only ten days thereafter, and (b), that on or about the 10th day of April, prior to the making of the sale, the contract was cancelled by agreement of the parties upon consideration of defendant paying one-half of the expenses incurred to that date. A demurrer was sustained to paragraph (a), and paragraph (b), was controverted by reply and upon trial before a jury there was a verdict in favor of plaintiff for the full amount sued for, and defendant's motion for a new trial was overruled and he prosecutes this appeal.

It is first insisted that the verdict is flagrantly against the evidence; but this contention is unsupported by any rule of practice prevailing in this court. Plaintiff and his witness, Williams, who was interested in the sale, testified positively that plaintiff first approached Giltner about the sale of the leases and carried him to the room of defendant in the Seelbach Hotel and introduced him to defendant, when the parties began negotiations to effect the sale, and that after it was closed defendant promised to pay the demand of plaintiff when the deferred payment was collected. Their testimony is to some extent corroborated by the deputy sheriff who served the summons and who testified to admissions made by defendant at that time corroborative of plaintiff's contention. All of that testimony is, in substance, denied by defendant and Giltner, except they are somewhat evasive in their denials of the meeting in defendant's room in the hotel. Surely, it can not be successfully contended, under the condition of the testimony as related, that the verdict is flagrantly against the evidence so as to authorize a reversal therefor. At most the evidence is only contradictory, as is true in almost all contested cases, and which renders it the peculiar province of the jury to determine the truth

of the matter and its determination under such circumstances will not be disturbed by the courts.

It is next complained that the court improperly excluded from the jury competent evidence offered by defendant. He was asked this question: "Tell, after the preparation of the contract what passed between you and Mr Rheubottom; what conversation you had there and who was present." An objection was sustained to the question and the avowal was: "If permitted to answer the witness would state, and it is true, that after the contract between the plaintiff and the defendant was signed, that the plaintiff asked the defendant to come to Louisville with him, and he thought that he could sell the leases, and that if he didn't sell them within a week or ten days he would agree that the whole contract should be cancelled." The same fact was offered to be proven by defendant's son, who drafted the contract, and we presume it was offered to sustain paragraph (a), *supra,* of the answer to which a demurrer was sustained, although in another paragraph it was alleged that the contract was not cancelled until April 10, as we have heretofore observed. Whatever the purpose was, the offered testimony contained no defense, since it was a part of the same transaction resulting in the execution of the contract and the offer by plaintiff to terminate it at the expiration of ten days was voluntary and without consideration.

The court by a proper instruction submitted to the jury the defense relied on in paragraph (b), of the answer (which was denied by reply), and the verdict denied that defense, which finding is sustained by the evidence in the record.

It is lastly insisted that the court erred in giving to the jury instruction No. 2, which says: "The court further instructs you that the fact that the title to one of said oil leases failed and that by reason of such failure, the defendant, Preston, rebated on the purchase price, two thousand dollars, cannot affect the commission to be paid to the plaintiff, if you believe from the evidence that he was the procuring cause of said sale." Instruction number 3 properly defined the words "procuring cause" and we do not understand counsel as criticising it. In disposing of this last contention, it may be said that, as a general rule, a broker employed to sell either real estate or

personal property, upon performance of his brokerage contract is entitled to his agreed commissions, notwithstanding there was a partial or an entire failure of title which disabled the owner of the property from carrying out the contract of sale, unless the broker had knowledge of such defective title, or of such facts as prudent inquiry would have revealed the truth concerning it at the time he was employed or before he negotiated the sale. 9 Corpus Juris, pages 627, 629; Reid v. Thompson, 20 Ky. L. R. 1887; Womack v. Douglas, 157 Ky. 716, and Renick v. Mann, et al., 194 Ky. 251. There is no pretense that plaintiff at any time had any knowledge of the alleged defect of title in any of the leases, and, under the rule stated, the failure of the title and the rebate by plaintiff of a part of the purchase price on account thereof could not affect plaintiff's right to collect full commission.

But it is insisted that the above quoted sentence from the contract limits plaintiff's commissions to one-half of "all money received over and above $2.50 per acre" and that the rebated $2,000.00 was not *received* and he is, therefore, not entitled to recover any part of it. We are not inclined, however, to construe the contract as contended, since we are convinced that it was not intended therein to confer the right upon defendants to reduce plaintiff's commissions by rebating the purchase price without his consent. But, whatever may be the true interpretation of the language of the contract, defendant was not authorized thereby in any event to rebate or surrender any part of the contract price greater than the number of acres included in the defective titles, multiplied by the agreed sale price per acre, which in this case was $4.50. Since there is nothing in the record to show what that acreage was, it may not have exceeded one acre, in only $2.00 of the price of which was plaintiff entitled to share under the terms of his contract, and which share would be only $1.00, an amount too insignificant to authorize a reversal of the judgment under the maxim "*De minimis non curat lex.*"

There being no error in the record authorizing a reversal of the judgment it is accordingly affirmed.